## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAROL A. TRAWICK, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 08-43 (GMS) |
| | ) | |
| v. | ) | |
| | ) | |
| T&A HOLDING CORPORATION, | ) | |
| MT HOLDING CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO
## PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

Stephen C. Norman (#2686)
Sarah E. DiLuzio (#4085)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19801
Telephone (302) 984-6000
snorman@potteranderson.com
sdiluzio@potteranderson.com

Of Counsel:

David K. Momborquette
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Telephone (212) 593-5955

Attorneys for Defendants T&A Holding
Corp. and MT Holding Corp.

Dated: June 6, 2008
865889/32893

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS .............................................................1

SUMMARY OF ARGUMENTS....................................................................................2

COUNTER-STATEMENT OF FACTS .......................................................................3

ARGUMENTS .

I   PLAINTIFF HAS NOT SATISFIED THE STANDARD FOR
    MOTIONS TO DISMISS UNDER FED R. CIV. P. 12(B)(6) ..................................................7

II   DEFENDANTS HAVE STATED A VALID CLAIM
    FOR BREACH OF CONTRACT....................................................................................8

III  DEFENDANTS HAVE STATED A VALID CLAIM FOR BREACH OF THE
    COVENANT OF GOOD FAITH AND FAIR DEALING........................................................11

CONCLUSION......................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*511 West 232nd Owners Corp. v. Jennifer Realty Co.*,
    98 N.Y.2d 144 (N.Y. 2002) ...................................................................................13

*Acme Supply Co. v. City of New York*,
    834 N.Y.S.2d 142 (2007)...............................................................................9, 11

*Anderson v. Geico Cas. Co.*,
    2007 U.S. Dist. LEXIS 72618 (D. Del. Sept. 27, 2007)...........................................7

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)............................................................................................7

*Carvel Corp. v. Diversified Management Group, Inc.*,
    930 F.2d 228 (2d Cir.1991)...................................................................................11

*Chase Manhattan Bank v. Keystone Distributors, Inc.*,
    873 F. Supp. 808 (S.D.N.Y. 1994) ........................................................................12

*Conley* v. *Gibson*,
    355 U.S. 41 (1957)..................................................................................................7

*Don King Productions, Inc. v. Douglas*,
    742 F. Supp. 741 (S.D.N.Y.1990) ........................................................................12

*Enzo Life Sciences, Inc. v. Digene Corp.*,
    295 F. Supp.2d 424 (D. Del. 2003)..........................................................................3

*Fantozzi v. Axsys Techs., Inc.*,
    2007 U.S. Dist. LEXIS 61448 (S.D.N.Y. 2007) ............................................... 12-13

*Filner v. Shapiro*,
    633 F.2d 139 (2d Cir. 1980)..................................................................................12

*Frontier Oil Corp. v. Holly Corp.*,
    2005 WL 1039027 (Del. Ch. 2005) .......................................................................12

*Johnson v. Geico Cas. Co.*,
    516 F. Supp. 2d 351 (D. Del. 2007).........................................................................8

*Leberman v. John Blair & Co.*,
    880 F.2d 1555 (2d Cir.1989)..................................................................................12

*Morse v. Lower Merion School Dist.*,
    132 F.3d 902 (3d Cir. 1997)....................................................................................7

*Ruttenberg v. Davidge Data Sys. Corp.*,
  626 N.Y.S.2d 174 (1995) .........................................................................................9, 11

*Schroeder v. Schroeder*,
  56 N.Y.S.2d 36 (N.Y. App. Div. 1945) .......................................................................9

*Swersky v. Dreyer & Traub*,
  643 N.Y.S.2d 33 (N.Y. App. Div. 1996) ....................................................................9

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)........................................................................................... 1-2, 7

Federal Rule of Civil Procedure 8(a)(2) .........................................................................7

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Carol A. Trawick ("Plaintiff") initiated this breach of contract action on January 23, 2008, alleging that defendants T&A Holding Corporation and MT Holding Corporation (collectively "Defendants") failed to make certain post-closing payments in accordance with the parties' Stock Purchase Agreement. (D.I. 1) On April 14, 2008, Defendants filed an answer denying that they are required to make the post-closing payments as alleged by Plaintiff. (D.I. 6) Defendants also asserted two counterclaims against Plaintiff for (1) breach of contract; and (2) breach of the covenant of good faith and fair dealing. The counterclaims are premised on Plaintiff's failure to disclose material information about the crown jewel of Plaintiff's business – a contract with the United States Patent and Trademark Office. Had Plaintiff disclosed this material information, Defendants would not have entered into the Agreement or closed the transaction. By virtue of Plaintiff's deception, she was able to sell the business for much more than it was worth and Defendants were deprived of the benefit of their bargain.

On May 19, 2008, following an extension of time, Plaintiff filed a Motion to Dismiss Defendants' Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 8) This is Defendants' Answering Brief in Opposition to Plaintiff's Motion to Dismiss their Counterclaims.

## SUMMARY OF ARGUMENTS

1.    Plaintiff has failed to satisfy the standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Accepting all of Defendants' well pled allegations as true, as the Court must, it is clear that Defendants have properly pled a claim for breach of contract.

2.    Plaintiff has failed to satisfy the standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Accepting all of Defendants' well pled allegations as true, as the Court must, it is clear that Defendants have properly pled a claim for breach of the covenant of good faith and fair dealing.

## COUNTER-STATEMENT OF FACTS

When considering a motion to dismiss, the material allegations of the complaint must be accepted as true. *See Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F. Supp.2d 424, 426 (D. Del. 2003). Accordingly, the following facts are derived solely from Defendants' Counterclaim.

### The Stock Purchase Agreement

On or about August 28, 2006, T&A Holding Corporation ("T&A Holding") entered into a Stock Purchase Agreement (the "Agreement") to acquire all of the outstanding shares of the common stock of T.R. Systems, Inc. ("T.R. Systems"). As described in the Agreement, T.R. Systems is engaged in the business of providing specialized network engineering, operations, maintenance, telecommunication and other information technology services to governmental and civilian customers. (*See* Ex. A to Opening Brief.)

At the time of the sale, T.R. Systems had four stockholders, all of whom were designated as "Sellers" in connection with the Agreement. *Id.* In exchange for all of their stock, T&A Holding paid Sellers a base purchase price of $42,500,000.00. *Id.* The Agreement also provided for adjustments and future earn-out payments, subject to certain conditions. (Agreement, ¶ 2) At the time T&A Holding entered into the Agreement, T.R. Systems' most valuable asset was its Facilities Management and End-User Support 2 Contract with the United States Patent and Trademark Office (the "PTO Contract"). (D.I. 6, ¶ 7) The PTO Contract accounted for approximately 69% of T.R. Systems' revenue in 2006 and approximately 67% of its revenue in 2007. *Id.*

T.R. Systems was able to obtain the valuable PTO Contract because it was certified as a "small business" by the United States Small Business Administration ("SBA"). Government agencies are encouraged, through the distribution of certain set-aside credits, to contract with

3

certified small businesses. (D.I. 6, ¶ 8) At the time T&A Holding entered into the Agreement,

SBA rules allowed small business size status to be determined on the date companies submitted

their initial proposals for federal contracts, and characterization of a company as "small" lasted

for the duration of the contract. (D.I. 6, ¶ 9) The PTO Contract, which formed a vital

component of TR Systems' assets, was not set to expire until July 1, 2012. (D.I. 6, ¶ 10)

Accordingly, T&A Holding's purchase of T.R. Systems was based, in part, upon the belief that

the PTO Contract would continue in force through June 2012. *Id.*

The parties closed the Agreement on November 3, 2006. (D.I. 6, ¶ 11) Merely twelve

days after the Closing, the Small Business Administration issued a final rule amending, among

other things, its size recertification regulations in a manner that materially and adversely

impacted the PTO Contract. (D.I. 6, ¶ 12) Under the SBA's new rules, for contracts of more

than five years' duration, such as the PTO Contract, initial size certification continues for a

maximum of five years. Thereafter, size "recertification" is required. *Id.* As a result of

Defendants' acquisition of T.R. Systems, Defendants will no longer qualify as a small business.

*Id.* Thus, the PTO Contract will be open for competitive bidding under a small business set-

aside beginning July 1, 2008, rather than on July 1, 2012 when its current term expires. (D.I. 6, ¶

13) Significantly, Defendants will be precluded from bidding because the company no longer

meets the size requirements. (D.I. 6, ¶ 13) Indeed, the PTO has already begun soliciting bids for

the PTO Contract from certified small business vendors (again, a group Defendants no longer

belong to). *Id.*

The loss of the PTO Contract will have a material, adverse impact upon Defendants'

financial prospects and renders the company formerly know as T.R. Systems far less valuable

than the over $40 million for which it was purchased. (D.I. 6, ¶ 14)

4

Defendants believe that Trawick knew of the impending SBA rule change prior to the Agreement's Closing Date. (D.I. 6, ¶ 15) Indeed, nowhere in her brief does Plaintiff disclaim knowledge of the impending SBA rule change. Despite her advanced knowledge of this material information, Trawick did not inform Defendants of this critical development. *Id.* Had Defendants been made aware of the impending SBA rule change, they would not have entered into the Agreement or closed the transaction. (D.I. 6, ¶ 16)

Accordingly, on November 2, 2007, Defendants provided Trawick with written notice, in accordance with Section 11.4(a) of the Agreement, that the Sellers had breached the Agreement and were required to indemnify Defendants for $9,118,130.00 in damages pursuant to Section 11.5(b) of the Agreement (defined as the "Seller Indemnification Obligation"). (D.I. 6, ¶ 17) On November 5, 2007, Defendants provided Trawick with further notice that they would offset the unsatisfied Seller Indemnification Obligation in the amount of $9,118,130 against the Initial Holdback Amount and the Earn-Out Payment that Trawick claimed were due. (D.I. 6, ¶ 18) Because the offset exceeded the amount due under the Holdback and Earn-Out provisions (totaling $5.5 million), Defendants advised Trawick that no payments were due to her. (*Id.*; D.I. 1) Sections 2.2(d) and 2.3(b)(i) of the Agreement expressly permit Defendants to forego payment of the Initial Holdback Amount and the Earn-Out Payment in the event that Sellers breach the Agreement in a manner that gives rise to a greater Indemnification Obligation. *Id.*

Relevant Provisions of the Agreement

Defendants' counterclaims for breach of contract and breach of the covenant of good faith and fair dealing are based upon a fair reading of several sections of the Agreement. For example, Section 3.13 of the Agreement provides, in pertinent part:

> Company has all the Contracts it needs to carry on the Business in all material respects as now being conducted. All of the Contracts

5

> are in full force and effect, and are valid, binding, and enforceable in accordance with their terms . . .
>
> * * *
>
> Company has not received notice of an intention by any party to any Contract that provides for a continuing obligation by any party thereto on the date hereof to terminate such Contract or amend the terms thereof, other than modifications in the ordinary course of business that do not materially adversely affect Company and [] the consummation of the transactions contemplated by this Agreement will not affect the validity, enforceability and continuation (all in accordance with the terms of the Contracts) of any such Contracts as of the date hereof.

(D.I. 6, ¶ 19)  The Agreement also contains a provision, Section 3.25, acknowledging that neither party has provided untrue statements of material fact, or omitted any material facts, in connection with the transaction.  (D.I. 6, ¶ 20)  Specifically, it provides:

> No representations or warranties by the Company or the Sellers set forth in this Agreement . . . (i) contains or will contain any untrue statement of a material fact, or (ii) omits or will omit to state . . . any material fact necessary to make the schedules or facts contained therein not misleading.

Moreover, Section 3.34 of the Agreement is titled "Absence of Changes," and represents that, "except for matters of general knowledge in the industry related to general economic or industry conditions, there has not been any change or development with respect to Company's business, operations, condition (financial or otherwise), results of operations, assets or liabilities . . .." (D.I. 6, ¶ 21)  By withholding from Defendants the fact of the impending change in the SBA rules, Trawick breached each of the foregoing provisions. (D.I. 6, ¶ 22)

**ARGUMENT**

I.    **PLAINTIFF HAS NOT SATISFIED THE STANDARD FOR
      MOTIONS TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)**

   In considering whether a complaint, or a counterclaim, survives a motion to dismiss, the Court must review whether the Defendants' Counterclaim "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (quotations omitted; emphasis in original).

   Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim" showing that the pleader is entitled to relief, in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957). The Court may dismiss a complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6), only if the complaint fails to provide the grounds of plaintiff's entitlement to relief. *Twombly*, 127 S. Ct. at 1969. To state a claim, the plaintiff must merely allege sufficient facts "to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Id.* at 1965. Heightened fact pleading is not required, but enough facts must be alleged to state a claim to relief that is plausible on its face. *Id.* at 1974. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. As Plaintiff concedes, the counterclaims can only be dismissed if "it appears to a <u>certainty</u> that no relief could be granted under any set of facts which could be proved. *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (emphasis added). The moving party bears the burden of persuasion that dismissal is appropriate under these difficult standards. *See Anderson v. Geico Cas. Co.*, 2007 U.S. Dist. LEXIS 72618 (D. Del. Sept. 27, 2007).

7

Furthermore, to survive a motion to dismiss their breach of contract claim, all Defendants need do is identify a contractual obligation, whether express or implied, a breach of that obligation by the plaintiff, and resulting damage. *See Johnson v. Geico Cas. Co.*, 516 F. Supp. 2d 351, 357-358 (D. Del. 2007) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.,* 840 A.2d 606, 612 (Del. 2003)). Trawick does not allege, because she cannot, that Defendants have failed to plead the requisite elements of their breach of contract or breach of the covenant of good faith and fair dealing claim. Instead, Trawick argues that Defendants' reliance on certain contract provisions is misplaced. Such an argument may be appropriate on a motion for summary judgment, but does not carry plaintiff's heavy burden at the motion to dismiss stage. Indeed, it cannot be said with certainty at this stage that no relief could be granted under any set of facts.

While the foregoing principles operate in Defendants' favor, Defendants need not depend upon these presumptions in order to prevail. As demonstrated below, Defendants Counterclaim is more than sufficient to survive a motion to dismiss.

## II. DEFENDANTS HAVE STATED A VALID CLAIM FOR BREACH OF CONTRACT

As a threshold matter, Defendants agree that their counterclaims are governed by the substantive law of the State of New York. (*See* Agreement, ¶ 23.) For purposes of this motion, however, the governing state law is of little consequence. This motion turns of questions of procedure and generally accepted principles of contract interpretation. Indeed, Trawick's argument in support of her motion to dismiss Defendants' breach of contract claim relies upon New York authority only for the uncontroversial and nearly universal concepts that contract interpretation is a matter of law for the Court to decide and all terms of a contract should be given force and effect whenever possible. *See* D.I. 9, citing *Tigue v. Commercial Life Ins. Co.*,

631 N.Y.S.2d 974 (1995); *Acme Supply Co. v. City of New York*, 834 N.Y.S.2d 142 (2007); and

*Ruttenberg v. Davidge Data Sys. Corp.*, 626 N.Y.S.2d 174 (1995).

In any event, Trawick's argument simply misses the mark. She begins with a

mischaracterization of Defendants' claims, and then uses that false premise as the basis for

arguing that Section 4.8 of the Agreement renders Defendants' claims invalid. Section 4.8 of the

Agreement, regarding forward-looking statements, does not foreclose Defendants' breach of

contract claim – which is based upon the fact that (i) Trawick knew the SBA rule change was

imminent, (ii) knew it would render the PTO Contract meaningless after July 1, 2008, (iii) knew

the loss of the PTO Contract would have a severe impact on the business, and (iv) knew the loss

of the PTO Contract could affect Defendants' decision to purchase the company. Armed with

this knowledge, Trawick chose to keep silent. (D.I. 6, ¶¶ 7, 10, 12, 14, 15) Trawick's silence

was contrary to her express obligations under the Agreement, as well as her duty of good faith

and fair dealing. *See, e.g., Swersky v. Dreyer & Traub*, 643 N.Y.S.2d 33, 37 (N.Y. App. Div.

1996) (finding duty to disclose under "special facts" doctrine when "one party's superior

knowledge of essential facts renders a transaction without disclosure inherently unfair");

*Schroeder v. Schroeder*, 56 N.Y.S.2d 36, 38 (N.Y. App. Div. 1945) (noting that, when a material

fact changes without the knowledge of the other contracting party, "good faith and common

honesty" require the party with knowledge to correct that ignorance).

Defendants do not, as plaintiff argues, allege that Trawick had any control over the

United States SBA, or that she used a crystal ball capable of predicting the future rule change.

On the contrary, Defendants' counterclaims arise from the knowledge that Trawick actually

possessed *at the time of the sale*, but chose to hide from Defendants in the hopes of selling T.R.

Systems for more than it was worth. Trawick should not be rewarded for her deceit. The

9

Agreement is replete with language that demonstrates that Defendants contracted for Trawick to be responsible for ensuring the business would continue to operate in its normal course leading up to and immediately following the sale, and to notify Defendants if there was any danger that would not be the case. For example, in Section 3.13 of the Agreement, Trawick represented that all of the company's contracts were in full force and effect, and that the company had not "received notice of an intention by any party" to a continuing contract, including the PTO Contract, "to terminate such Contract or amend the terms thereof." (D.I. 6, ¶ 19) Despite assuring Defendants that all was well by this representation, Trawick knew the PTO Contract was in jeopardy because she had notice of the SBA's intent to change the relevant rules, thereby effectively terminating the PTO Contract five years early.[1] Such conduct constitutes a clear and unmistakable breach of the Agreement.

That, however, was not the only provision of the Agreement that she breached. Trawick reinforced her representation that she had no knowledge of an intention by the government, the other party to the PTO Contract, to alter the terms of the PTO Contract in Section 3.25 of the Agreement. That provision includes Trawick's assurance that T.R. Systems had not provided any untrue statements of material fact, or omitted any material facts, in connection with the transaction. (D.I. 6, ¶ 20) Again, contrary to this affirmative representation, Trawick omitted the material information – that she then possessed - that the company was in jeopardy of losing the PTO Contract because the SBA was actively promulgating a new rule. Finally, in Section 3.34 of the Agreement, Trawick promised for a third time that she is not aware of any change or

---

[1] Plaintiff tries to deflect her knowledge of the impending rule change by asserting that the SBA's rule making procedures "do not include clearing their actions in advance with Plaintiff . . .." This argument is a red herring as no such claim was made by Defendants. Instead, it is Defendants' position that Plaintiff breached the Agreement by concealing her knowledge of the SBA rule change.

development "with respect to Company's business, operations, condition (financial or otherwise)" that would have a material adverse effect on the company. (D.I. 6, ¶ 21)

In the face of this language and her admission, Trawick attempts to justify her silence by hiding behind Section 4.8, which sets forth the caveat that the parties cannot vouch for, nor should they rely upon, the accuracy of any forward-looking financial information. Trawick's reliance on Section 4.8 is misplaced. Defendants are not attempting to rely upon a future financial projection or budget as a basis for arguing that profits are not what they expected. Instead, they are attempting to hold Trawick to her word that, at the time of the sale, she was not aware of any notice from the government (as a party to a contract) that it intended to alter to terminate the PTO Contract. That was simply not the case, and Defendants were thereby deprived of the benefit of their bargain.

Finally, as Trawick herself notes, the Court must endeavor to give effect to all of the Agreements provisions, and Section 4.8 cannot be read to supersede or negate the affirmative representations contained in Sections 3.13, 3.25, and 3.34. *See, e.g., Acme Supply Co. v. City of New York*, 834 N.Y.S.2d 142, 143 (N.Y. 2007); *Ruttenberg v Davidge Data Sys. Corp.*, 626 N.Y.S.2d 174, 177 (1995) (stating "[i]t is a recognized rule of construction that a court should not adopt an interpretation which will operate to leave a provision of a contract ... without force and effect") (quotations omitted).

## III.    DEFENDANTS HAVE STATED A VALID CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

New York law implies a covenant of fair dealing and good faith in all contracts. *See Carvel Corp. v. Diversified Management Group, Inc.*, 930 F.2d 228, 230 (2d Cir.1991). In certain cases, "a party may be in breach of its implied duty of good faith and fair dealing even if

11

it is not in breach of its express contractual obligations." *Chase Manhattan Bank v. Keystone Distributors, Inc.,* 873 F. Supp. 808, 815 (S.D.N.Y. 1994). The covenant "precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement." *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1560 (2d Cir.1989). Hence, the covenant is violated "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under the agreement." *Don King Productions, Inc. v. Douglas,* 742 F. Supp. 741, 767 (S.D.N.Y.1990).

"The implied covenant does not . . . operate to create new contractual rights; it simply ensures that parties to a contract perform the substantive, bargained-for terms of their agreement and that parties are not unfairly denied express, explicitly bargained-for benefits." *Id.* (citations and internal quotations omitted); *see also Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir. 1980) (holding that the covenant of good faith and fair dealing "precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement"); *see also Frontier Oil Corp. v. Holly Corp.,* 2005 WL 1039027, at *28 (Del. Ch. 2005) (stating the covenant is "designed to protect the spirit of an agreement when, *without violating an express term of the agreement,* one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain") (emphasis in original).

As the Southern District Court of New York has explained, if "[i]t appears from the complaint that plaintiffs are alleging something more than what would amount to a simple breach of some specific provision or provisions of the Agreement", the breach of the covenant of good faith and fair dealing claim will survive a motion to dismiss. *Fantozzi v. Axsys Techs., Inc.*, 2007 U.S. Dist. LEXIS 61448, *6-*7 (S.D.N.Y. 2007).

In this case, Defendants' claim for breach of the covenant of good faith and fair dealing encompasses the promise, which a reasonable person in Defendants' position would understand was inherent in the deal, that Trawick was dealing honestly with Defendants and was not withholding material information about the company's crown jewel. *See 511 West 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153 (N.Y. 2002) (stating the duties of good faith and fair dealing "encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included") (citations omitted). The overarching unfairness of Trawick's omissions are not only inconsistent with express provisions in the Agreement, but, more fundamentally, undermine the basis of the bargain.

As Defendants' counterclaim alleges, and what must be presumed true for purposes of this motion, Trawick breached the duty of good faith and fair dealing owed to Defendants by failing to disclose material information to them in a timely or reasonable manner, by providing Defendants with misleading and/or inaccurate information, including information relating to the continuation of the PTO Contract, by failing to satisfy its covenants and obligations under the Stock Purchase Agreement, by failing to cure or rectify in any reasonably manner its material breach of contract upon written notice from Defendants, and by participating in other acts demonstrating bad faith toward Defendants. Where, as here, Defendants' claim of a breach of the covenant of good faith and fair dealing depends on facts in addition to those that might support a breach of contract claim, that claim is not duplicative of the breach of contract claim and may proceed. *See Fantozzi,* 2007 U.S. Dist. LEXIS 61448 at *7.

13

## CONCLUSION

For the foregoing reasons, Defendants' respectfully request that the Court DENY

Plaintiff's Motion to Dismiss their Counterclaim.

POTTER ANDERSON & CORROON LLP

By: _Sarah E. DiLuzio_

    Stephen C. Norman (#2686)
    Sarah E. DiLuzio (#4085)
    1313 N. Market Street
    P.O. Box 951
    Wilmington, Delaware 19801
    Telephone (302) 984-6000
    snorman@potteranderson.com
    sdiluzio@potteranderson.com

Attorneys for Defendants T&A Holding
Corp. and MT Holding Corp.

Of Counsel:

David K. Momborquette
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Telephone (212) 593-5955

Dated: June 6, 2008
865889/32893

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Sarah E. DiLuzio, hereby certify that on June 6, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification of

such filing(s) to the following and the document is available for viewing and downloading from

CM/ECF:

Kevin F. Brady (#2248)
Jeremy D. Anderson (#4515)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
kbrady@cblh.com
janderson@cblh.com

By:    */s/ Sarah E. DiLuzio*
Sarah E. DiLuzio, Esquire (#2686)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000